[Cite as *State v. Henderson*, 2017-Ohio-2620.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellant | : | Hon. John W. Wise, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| DONALD R. HENDERSON | : | Case No. 16-CA-23 |
| | : | |
| Defendant-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                                          Pleas, Case No. 12CR533



JUDGMENT:                                      Affirmed



DATE OF JUDGMENT:                       April 28, 2017




APPEARANCES:

For Plaintiff-Appellant                           For Defendant-Appellee

GREGG MARX                                   THOMAS R. ELWING
239 West Main Street                          60 West Columbus Street
Suite 101                                            Pickerington, OH  43147
Lancaster, OH  43130

*Wise, Earle, J.*

{¶ 1}   Plaintiff-Appellant, the state of Ohio, appeals the June 6, 2016 entry of the Court of Common Pleas of Fairfield County, Ohio, terminating its previous commitment of Defendant-Appellee, Donald Henderson.

## FACTS AND PROCEDURAL HISTORY

{¶ 2}   On January 7, 2011, the Fairfield County Grand Jury indicted appellee on two counts of rape in violation of R.C. 2907.02 (Case No. 2011-CR-7).

{¶ 3}   On January 11, 2011, appellee entered a plea of not guilty by reason of insanity and filed a motion to determine competency.   Psychiatric evaluations were ordered.   Hearings were held on March 4, and April 26, 2011.   By entry filed April 29, 2011, the trial court found appellee incompetent to stand trial, and ordered treatment at Appalachian Behavioral Healthcare for restoration to competency.

{¶ 4}   A hearing on appellee's competency was held on February 8, 2012.   By entry filed February 21, 2012, the trial court found appellee competent to stand trial.

{¶ 5}   Following an additional evaluation regarding appellee's not guilty by reason of insanity plea, hearings were held on July 20, and September 10, 2012.   By agreed entry filed September 25, 2012, appellee was again found to be incompetent to stand trial, and restoration treatment was ordered.

{¶ 6}   On November 30, 2012, appellee was re-indicted on the same two rape counts (Case No. 2012-CR-533).   The state dismissed the first indictment on December 18, 2012.   On January 23, 2013, appellee entered a plea of not guilty by reason of insanity.

{¶ 7} On February 12, 2013, appellee filed a motion to dismiss on speedy trial grounds, and on March 6, 2013, filed a motion to dismiss the indictment for violating the one year limitation for restoration to competency pursuant to R.C. 2945.38(C). On March 22, 2013, the state filed a motion to retain jurisdiction pursuant to R.C. 2945.39.

{¶ 8} By entry filed April 1, 2013, the trial court determined the maximum period for restoration to competency had expired on January 12, 2013 as argued by appellee.

{¶ 9} A hearing to determine the trial court's continuing jurisdiction was held on June 12, 2013.

{¶ 10} By entry filed July 3, 2013, the trial court denied appellee's motions to dismiss.

{¶ 11} A hearing on appellee's competency to stand trial was held on August 1, 2013. By entries filed August 15, 2013, the trial court found continuing jurisdiction and committed appellee to Appalachian Behavioral Healthcare, ordered appellee to undergo an additional evaluation to determine competency to stand trial, and found appellee was incompetent to stand trial as of January 12, 2013.

{¶ 12} Appellee filed a notice of appeal and this court affirmed the trial court's decision. *State v. Henderson,* 5th Dist. Fairfield No. 13-CA-61, 2014-Ohio-2991 (*"Henderson I"*).

{¶ 13} On April 23, 2015, the trial court ordered appellee to undergo a psychiatric evaluation by Appalachian Behavioral Healthcare to determine his competency to stand trial. Evaluations from two different psychologists were filed on May 20, and August 5, 2015. A hearing was held on October 1, 2015. By entry filed February 2, 2016, the trial court determined appellee remained incompetent to stand trial. The trial court

requested additional briefing as to whether appellee's commitment should be terminated pursuant to R.C. 2945.401(J).

{¶ 14} Following additional briefing and psychological reports, the trial court found appellee was not a mentally ill person subject to court order and was not a mentally retarded person subject to institutionalization by court order, and therefore terminated appellee's commitment.  Entry filed June 6, 2016.

{¶ 15} Appellant filed an appeal and this matter is now before this court for consideration.  Assignment of error is as follows:

I

{¶ 16} "THE TRIAL COURT ERRED WHEN IT TERMINATED ITS PREVIOUSLY ORDERED COMMITMENT OF APPELLEE PURSUANT TO R.C. 2945.401(J) BY JOURNAL ENTRY FILED ON JUNE 6, 2016."

I

{¶ 17} Appellant claims the trial court erred in terminating appellee's commitment.  We disagree.

{¶ 18} R.C. 2945.401 governs termination of commitment.[1]  Subsection (A) stated the following in pertinent part:

A defendant found incompetent to stand trial and committed pursuant to section 2945.39 of the Revised Code or a person found not

---

[1]R.C. 2945.401 was amended effective October 12, 2016, to replace the term "mental retardation" with "intellectual disability."  The cited provisions in this opinion follow the language in effect at the time of the trial court's decision, June 6, 2016, prior to the effective date of the amendment.  Same for R.C. 5122.01 and 5123.01 discussed later in this opinion.

guilty by reason of insanity and committed pursuant to section 2945.40 of the Revised Code shall remain subject to the jurisdiction of the trial court pursuant to that commitment, and to the provisions of this section, until the final termination of the commitment as described in division (J)(1) of this section.

{¶ 19} Subsection (J)(1) provided the following:

(J)(1) A defendant or person who has been committed pursuant to section 2945.39 or 2945.40 of the Revised Code continues to be under the jurisdiction of the trial court until the final termination of the commitment. For purposes of division (J) of this section, the final termination of a commitment occurs upon the earlier of one of the following:

(a) The defendant or person no longer is a mentally ill person subject to court order or a mentally retarded person subject to institutionalization by court order, as determined by the trial court;

(b) The expiration of the maximum prison term or term of imprisonment that the defendant or person could have received if the defendant or person had been convicted of the most serious offense with which the defendant or person is charged or in relation to which the defendant or person was found not guilty by reason of insanity;

(c) The trial court enters an order terminating the commitment under the circumstances described in division (J)(2)(a)(ii) of this section.

{¶ 20} Subsection (E) stated the following:

(E) In making a determination under this section regarding nonsecured status or termination of commitment, the trial court shall consider all relevant factors, including, but not limited to, all of the following:

(1) Whether, in the trial court's view, the defendant or person currently represents a substantial risk of physical harm to the defendant or person or others;

(2) Psychiatric and medical testimony as to the current mental and physical condition of the defendant or person;

(3) Whether the defendant or person has insight into the defendant's or person's condition so that the defendant or person will continue treatment as prescribed or seek professional assistance as needed;

(4) The grounds upon which the state relies for the proposed commitment;

(5) Any past history that is relevant to establish the defendant's or person's degree of conformity to the laws, rules, regulations, and values of society;

(6) If there is evidence that the defendant's or person's mental illness is in a state of remission, the medically suggested cause and degree of the remission and the probability that the defendant or person will continue treatment to maintain the remissive state of the defendant's or person's illness should the defendant's or person's commitment conditions be altered.

{¶ 21} Subsection (G) stated the following:

(G) In a hearing held pursuant to division (C) or (D)(1) of this section, the prosecutor has the burden of proof as follows:

(1) For a recommendation of termination of commitment, to show by clear and convincing evidence that the defendant or person remains a mentally ill person subject to court order or a mentally retarded person subject to institutionalization by court order;

(2) For a recommendation for a change in the conditions of the commitment to a less restrictive status, to show by clear and convincing evidence that the proposed change represents a threat to public safety or a threat to the safety of any person.

{¶ 22} "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will

produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross* at 477.

{¶ 23} "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. That is because the trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997-Ohio-260, 552 N.E.2d 1159.

{¶ 24} Appellee's competency to stand trial has been an ongoing issue for many years. On April 23, 2015, the trial court ordered appellee to undergo a psychiatric evaluation by Appalachian Behavioral Healthcare to determine his competency to stand trial. An evaluation was conducted by Russell T. Fox, Ph.D., a psychologist with Appalachian Behavior Healthcare. A second evaluation at appellee's request was conducted by Bradley A. Hedges, Ph.D., LPCC-S, a psychologist with Mid-Ohio Psychological Services, Inc. Dr. Fox opined appellee was competent to stand trial. Dr. Hedges opined appellee was not competent to stand trial and was not able to be restored to competency.

{¶ 25} A hearing was held on October 1, 2015. Each psychologist testified consistent with their evaluations. By entry filed February 2, 2016, the trial court

determined appellee remained incompetent to stand trial. For several reasons set forth in the entry, the trial court found Dr. Hedges to be "a more credible expert witness" on appellee's present competency. The trial court requested additional briefing as to whether appellee should remain in continued commitment or treatment and whether appellee's commitment should be terminated pursuant to R.C. 2945.401(J).

{¶ 26} Following additional briefing and supplemental reports by Dr. Fox and Dr. Hedges (State's Exhibit A and Defendant's Exhibit 1, respectively), the trial court found appellee was not a mentally ill person subject to court order and was not a mentally retarded person subject to institutionalization by court order, and therefore terminated appellee's commitment. Entry filed June 6, 2016.

{¶ 27} In his report dated April 6, 2016, Dr. Fox diagnosed appellee with Mild Intellectual Disability (formerly known as Mild Mental Retardation). Dr. Fox concluded appellee "is a mentally retarded person subject to institutionalization by court order." Dr. Fox advised the following:

It is also the professional opinion of this psychologist, with reasonable psychological certainty, that treatment and placement within a Developmental Center is the least restrictive environment to meet Mr. Henderson's treatment needs as well as his safety and the safety of the community. Though a state psychiatric hospital (such as ABH) could meet Mr. Henderson's safety needs, a Developmental Center (such as Cambridge Developmental Center) could provide the structure and supervision necessary to ensure safety, while being better equipped to

meet Mr. Henderson's treatment needs related to his Mild Intellectual Disability diagnosis.

{¶ 28} In his report dated May 4, 2016, Dr. Hedges also diagnosed appellee with Mild Intellectual Developmental Disorder.  Dr. Hedges opined the following:

In summary, Donald Henderson is not a mentally ill person subject to court ordered hospitalization because he is not currently experiencing a mental illness.  He is not a moderately retarded person subject to court ordered institutionalization because he experienced Mild Intellectual Developmental Disorder, not moderate, and because he has not experienced a "comprehensive evaluation" as required by statute. * * * Based on the currently available information, it would appear that Mr. Henderson would most appropriately be managed in a supported living environment that provides supervision of his behavior and support in getting his daily needs met.  Such an environment may be established with the assistance of the local Developmental Disability Board. Additionally, Alvis, Inc., in Columbus, Ohio provides services specifically tailored to persons with these challenges.  It is strongly recommended that Mr. Henderson be referred to the Fairfield County Board of Developmental Disability for consideration for placement at a facility such as Alvis.

{¶ 29} Appellant argues in terminating appellee's commitment, the trial court failed to consider the factors set forth in R.C. 2945.401(E) cited above. While the statute states "the trial court *shall* consider all relevant factors," the statute does not mandate findings on the factors, and does not limit consideration to the six factors only. (Emphasis added.)

{¶ 30} Rather than specifically addressing the factors in R.C. 2945.401(E), the trial court considered appellee's mental retardation and mental illness pursuant to R.C. 5123.01 and 5122.01, respectively. In its entry filed June 6, 2016, the trial court noted the following: "Pursuant to Ohio Revised Code Sections 2945.37(A)(8), as used in Sections 2945.37 to 2945.402 of the Ohio Revised Code, a 'mentally retarded person subject to institutionalization by Court order' has the same meaning as in Section 5123.01 of the Ohio Revised Code." The trial court also noted:

Title 2945 of the Ohio Revised Code itself does not contain a definition of the term "mental illness" or "mentally ill person subject to court order." Those terms are, however, defined in Title 5122 of the Ohio Revised Code, in particular Sections 5122.01(A) and (B). Further, Ohio Revised Code Section 2945.401(B) indicates: "All other Provisions of Chapters 5122 and 5123 of the Ohio Revised Code regarding hospitalization or institutionalization shall apply to the extent they are not in conflict with this Chapter. The court finds that Ohio Revised Code Sections 5122.01(A) and (B) are not in conflict with Chapter 2945 of the Ohio Revised Code. Thus, the following provisions, Ohio Revised Code

Sections 5122.01(A) and (B) apply to the Court's determination of whether the Defendant is a mentally ill person subject to Court order.

{¶ 31} Pursuant to R.C. 5123.01(O) at the time of the trial court's decision, a " '[m]entally retarded person subject to institutionalization by court order' means a person eighteen years of age or older who is at least *moderately* mentally retarded * * *." (Emphasis added.)

{¶ 32} R.C. 2945.401(E)(2) states a trial court shall consider "[p]sychiatric and medical testimony as to the current mental and physical condition of the defendant or person."  The trial court heard testimony from the two doctors during the October 1, 2015 hearing and reviewed their subsequent reports.  The reports included opinions on the factors set out in R.C. 2945.401(E)(1), (3), and (5).  The subsequent reports were in conflict.  However, they both agreed appellee was *mildly* mentally retarded, not moderately mentally retarded.  Based on this agreed diagnosis, pursuant to R.C. 2945.401(J)(1)(a), the trial court properly determined appellee was not a mentally retarded person as defined in R.C. 5123.01(O) subject to institutionalization by court order.

{¶ 33} "Mental illness" is defined in R.C. 5122.01(A) and "[m]entally ill person subject to court order" is defined in R.C. 5122.01(B).  As noted by the trial court in its June 6, 2016 entry, Dr. Fox "did not explicitly express an opinion as to whether the Defendant is or is not a mentally ill person subject to Court order or whether the Defendant has a mental illness."  On the other hand, the trial court noted Dr. Hedges

opined "the Defendant is not currently experiencing a mental illness." The trial court concluded the following on this issue:

> In sum, Dr. Fox did not explicitly find that the Defendant was suffering from a mental illness; he did however, note that the Defendant was receiving treatment **not** for a mental illness, but rather for a Mild Intellectual Disability. Dr. Hedges unequivocally found that the defendant is not now, nor has he in the recent past, suffered from a mental illness. Therefore, the Court finds, from all available evidence that the Defendant is not a mentally ill person subject to court order, pursuant to Ohio Revised Code Section 2945.401(J)(1)(a).

{¶ 34} The trial court then ordered the following:

> The Court directs Appalachian Behavioral Healthcare to refer the Defendant to the Developmental Disability Board of the county in which he will maintain his permanent residence, which would appear to be Fairfield County, Ohio, and that Appalachian Behavioral Healthcare recommend the Developmental Disability Board consider referring the Defendant for placement at the Alvis, Inc., facility, in Columbus, Ohio.

{¶ 35} We find by choosing to rely on Dr. Hedges's report, the trial court tacitly accepted his opinions on the factors listed in R.C. 2945.401(E)(1), (3), and (5).

{¶ 36} As for appellant's arguments involving *Henderson I,* that opinion concerned the trial court's decision filed August 15, 2013. We find our opinion was based on the status of the record at that time, and has no bearing to the present state of the record.

{¶ 37} Upon review, we find appellant did not meet its burden to prove by clear and convincing evidence that appellee was a mentally ill person subject to hospitalization by court order or a mentally retarded person subject to institutionalization by court order under R.C. 2945.401(J). We find the record contains sufficient evidence to support the trial court's decision to terminate appellee's commitment.

{¶ 38} The sole assignment of error is denied.

{¶ 39} The judgment of the Court of Common Pleas of Fairfield County, Ohio is hereby affirmed.

By Wise, Earle, J.

Delaney, P.J. and

Wise, John, J. concur.


EEW/sg 405